UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRIC LETANG,

                              Plaintiff,

                    v.

CITY OF NEW YORK,
OFFICER ROSA SOTO,
OFFICER EUGENIA WILLIAMS,
OFFICER MAXIMILIAN WARNER ,
SERGEANT PHILIP TERPOS, and
OFFICER JOHN SHEA,

                              Defendants.

---

ECF CASE

Case No. 13-CV-8144 (SAS)

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

COMES NOW THE PLAINTIFF, Terric LeTang, by his attorney, Steven M. Warshawsky, for his amended complaint[1] against the defendants and alleging as follows:

**NATURE OF THE CASE**

1.      This is a civil rights action under 42 U.S.C. § 1983 and New York state law to redress the ongoing hostility, harassment, and abuse directed at the plaintiff by officers of the New York City Police Department.   These officers, including but not limited to the defendants named herein, have subjected and continue to subject the plaintiff to repeated instances of unprovoked, unjustified, and unlawful intimidation, discrimination, false arrest, false imprisonment, malicious prosecution, and other abuses of police authority, based solely on his

---

[1]   Pursuant to FRCP 15(a)(2), "a party may amend its pleading . . . with the opposing party's written consent . . . ."   The defendants, through Assistant Corporation Counsel Wesley E. Bauman, consented in writing (via electronic mail) to this amended complaint, which identifies defendant "Officer Jane Doe" and substitutes all references to "Officer Jane Doe" in the original complaint with the actual person involved in the incident at issue, police officer Eugenia Williams.  This amended complaint otherwise is essentially identical to the original complaint.

race, the neighborhood where he lives, and his exercise of his First Amendment and other rights. This lawsuit involves three such incidents that occurred on May 21, 2012; August 17, 2012; and October 19, 2012.

## PARTIES

2.     Plaintiff **Terric LeTang** is a citizen of New York, and resides in New York, New York.  Mr. LeTang was born in 1970.  He is African-American.  He does not have a criminal record.

3.     Defendant **City of New York** is a municipality of the State of New York. The Corporation Counsel of NYC is Michael A. Cardozo.  The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007.  The New York City Police Department is an agency or instrumentality of the City of New York.  The City of New York is being sued under New York state law, pursuant to the doctrine of respondeat superior.

4.     Defendant **Officer Rosa Soto** (Tax No. 945215) is an employee of the New York City Police Department.  Upon information and belief, Officer Soto's last name at the time of the events in this case was "Cuervo."  Upon information and belief, her place of business is the NYPD Housing Bureau Police Service Area 9 located at 115-09 Jewel Avenue, Flushing, New York, 11365.  Officer Soto personally participated in the unlawful police activity on May 21, 2012.  At all relevant times, Officer Soto was acting under color of state law and in the scope of her employment with the NYPD.  Officer Soto is being sued in her individual capacity under 42 U.S.C. § 1983.

5.     Defendant **Officer Eugenia Williams** (Tax No. 845101) is an employee of the New York City Police Department.  Upon information and belief, her place of business is the NYPD Housing Bureau Police Service Area 6 located at 2770 Frederick Douglass Boulevard,

New York, New York, 10039.  Officer Williams personally participated in the unlawful police activity on May 21, 2012.  At all relevant times, Officer Williams was acting under color of state law and in the scope of her employment with the NYPD.  Officer Williams is being sued in her individual capacity under 42 U.S.C. § 1983.

   6. Defendant **Officer Maximilian Warner** (Tax No. 951421) is an employee of the New York City Police Department.  Upon information and belief, his place of business is the NYPD 25th Precinct located at 120 East 119th Street, New York, New York, 10035.  Officer Warner personally participated in the unlawful police activity on August 17, 2012.  At all relevant times, Officer Warner was acting under color of state law and in the scope of his employment with the NYPD.  Officer Warner is being sued in his individual capacity under 42 U.S.C. § 1983 and New York state law.

   7. Defendant **Sergeant Philip Terpos** (Badge No. 5095; Tax No. 931314) is an employee of the New York City Police Department.  Upon information and belief, his place of business is the NYPD 32nd Precinct located at 250 West 135th Street, New York, New York, 10030.  Sergeant Terpos personally participated in the unlawful police activity on October 19, 2012.  At all relevant times, Sergeant Terpos was acting under color of state law and in the scope of his employment with the NYPD.  Sergeant Terpos is being sued in his individual capacity under 42 U.S.C. § 1983 and New York state law.

   8. Defendant **Officer John Shea** (Tax No. 951240) is an employee of the New York City Police Department.  Upon information and belief, his place of business is the NYPD 32nd Precinct located at 250 West 135th Street, New York, New York, 10030.  Officer Shea personally participated in the unlawful police activity on October 19, 2012.  At all relevant times, Officer Shea was acting under color of state law and in the scope of his employment with

the NYPD.  Officer Shea is being sued in his individual capacity under 42 U.S.C. § 1983 and New York state law.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

10.      This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

11.      This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this district.

12.      There are no administrative exhaustion requirements for bringing the present civil rights action under 42 U.S.C. § 1983.  Allegations pertaining to the New York notice of claim requirements are set forth below in connection with each incident.

## MAY 21, 2012 INCIDENT

13.      This incident took place on May 21, 2012, around 1:30 p.m., outside the plaintiff's residence at 2660 8th Avenue in New York, New York.  This is the Drew Hamilton Houses apartment building in Harlem.  The plaintiff lives in apartment 14E.

14.      The incident began when Mr. LeTang attempted to board an elevator in his apartment building to go up to his apartment.  Officer Soto entered the elevator ahead of

Mr. LeTang, then physically pushed him back and told him to "take the next elevator."  When Mr. LeTang objected to this behavior, Officer Soto made some insulting remarks to Mr. LeTang.

15.     Officer Soto's actions were unprovoked and unjustified.  There was room for Mr. LeTang in the elevator and he was not delaying or interfering with Officer Soto in whatever police business she may have been conducting.  Officer Soto pushed Mr. LeTang for no reason other than to assert her authority as a police officer and to bully Mr. LeTang.

16.     Mr. LeTang used another elevator to go up to his apartment, where he obtained some writing materials, and then he returned downstairs to look for Officer Soto and write down her identifying information.

17.     Mr. LeTang went outside his apartment building and observed Officer Soto and Officer Williams sitting in a marked police car.  Officer Soto was in the driver's seat. Mr. LeTang asked Officer Soto for her name and badge number, which she refused to give and angrily replied, "No, motherfucker, now I need to see your ID."  Officer Soto exited the police car, confronted Mr. LeTang, and started arguing with him about what happened earlier at the elevator.  Officer Williams also exited the police car and tried to diffuse the situation, eventually telling Officer Soto, "To hell with this animal, c'mon, let's go."  The two police officers then drove off in their patrol car.

18.     Around this time, Mr. LeTang called the NYPD Internal Affairs Bureau and complained to an IAB representative about Officer Soto's behavior.  He still did not know her name.  The IAB representative advised Mr. LeTang to record the number of the police car she was driving.

19.     A few minutes later, while Mr. LeTang still was on the phone with IAB, the two police officers returned to the scene.  Clearly, the officers had decided to return to

confront Mr. LeTang and arrest him.  From inside the police car, Officer Williams ordered Mr. LeTang to get up against the car.  He refused, protesting that he had done nothing wrong. The two police officers then jumped out of the car and angrily confronted Mr. LeTang, who continued to protest verbally but tried to walk away from the officers.  During their encounter, the police officers and Mr. LeTang used profanity towards each other.  Part of this exchange occurred while Mr. LeTang was on the phone with IAB and was recorded.  After a few minutes of arguing with Mr. LeTang, Officer Williams said, "Fuck this shit, we're locking you up." Mr. LeTang was arrested, handcuffed behind his back, patted down roughly, and placed in the police car.

20.     At all relevant times, Mr. LeTang was not intoxicated or under the influence of drugs.  He was not conversing in a loud, abusive, or obscene manner.  He was not acting in a violent, tumultuous, or threatening manner.  He was not obstructing pedestrian or vehicular traffic.

21.     At all relevant times, Mr. LeTang's verbal protests and other speech directed at the police officers in response to their insults and provocations was protected by the First Amendment.

22.     The officers then transported Mr. LeTang to the PSA 6 station house. During the drive, Officer Williams repeatedly called Mr. LeTang an "animal" and "nigger." Mr. LeTang responded with harsh words of his own.  At one point during the drive, the officers pulled over and stopped for a few minutes while they were speaking on the phone with a supervisor about the incident.  The drive to the station house took approximately 10 minutes.

23.     At the PSA 6 station house, Mr. LeTang was placed in a holding cell, where he remained for approximately 1-2 hours. During this time, he was fingerprinted and

photographed, and his personal property was confiscated (including a cell phone, which was broken while in police possession).

24.     From inside the cell, Mr. LeTang witnessed the two police officers conferring with a sergeant about the incident.  Upon information and belief, this was the same supervisor with whom the officers were speaking during the drive to the station house. Originally, Officer Soto said she was going to charge Mr. LeTang only with resisting arrest, but the sergeant advised her that there must be an underlying charge.  So Officer Soto and Officer Williams concocted the charges against Mr. LeTang.

25.     Mr. LeTang subsequently was transported to the 28th Precinct station house, where he was placed in a holding cell for approximately 5-7 hours, then transported to Central Booking in Manhattan.  He was arraigned the next day, May 22, 2012, at approximately 6:30 p.m.  He pleaded not guilty and was released on his own recognizance.

26.     Mr. LeTang was in police custody for approximately 29 hours in total.

27.     There was no probable cause or other legal justification for Mr. LeTang's arrest and imprisonment.

28.     Mr. LeTang was charged, initially, with two offenses:  disorderly conduct, specifically using abusive or obscene language in a public place (P.L. § 240.20(3)), and resisting arrest (P.L. § 205.30).  In a criminal complaint dated May 16, 2013, two more charges were added:  obstructing governmental administration in the second degree (P.L. § 195.05), and another count of disorderly conduct, specifically obstructing vehicular or pedestrian traffic (P.L. § 240.20(5)).

29.     In the criminal complaint, Officer Soto wrote:  "I observed the defendant sitting on the hood of my police vehicle while I was conducting a routine patrol, thereby

preventing me from driving the vehicle and conducting my patrol." This was a knowingly false and perjured statement.

30.    In the criminal complaint, Officer Soto wrote: "I thereafter observed the defendant standing in the middle of the street for at least five minutes blocking the flow of vehicular traffic and preventing me from the driving the police vehicle and continuing my patrol. The defendant refused to move from the street when I asked him to." This was a knowingly false and perjured statement.

31.    In the criminal complaint, Officer Soto wrote: "Further, while the defendant was standing in the street I observed him shouting obscene language in that public area, to wit: FUCK YOU, THIS IS MY FUCKIN BUILDING I PAY FUCKIN RENT. FUCK YOU, FUCK YOU. SUCK MY FUCKIN DICK. FUCK YOU I WANT YOUR FUCKIN SHIELD. YOU FUCKIN PUSHED ME, FUCK YOU. I then observed the defendant reach out his hand and grab my badge with his fingers. Defendant's conduct created a public disturbance in that it caused people to express alarm." This was a knowingly false and perjured statement.

32.    In the criminal complaint, Officer Soto wrote: "When I was placing the defendant under arrest for the offenses described above, the defendant stuck defendant's hands in defendant's back pocket, tightened defendant's arm and refused to put defendant's hand behind defendant's back in an effort to evade being handcuffed." This was a knowingly false and perjured statement.

33.    At all relevant times, Mr. LeTang did not engage in any of the behaviors prohibited by the relevant statutes.

34.    At all relevant times, Officer Soto and Officer Williams knew that Mr. LeTang had not engaged in any of the behaviors prohibited by the relevant statutes.

-8-

35.     At all relevant times, Officer Soto and Officer Williams knew that there was no probable cause or other legal justification for arresting Mr. LeTang.

36.     Officer Soto and Officer Williams falsely and maliciously arrested Mr. LeTang solely to intimidate, harass, and demean Mr. LeTang.

37.     Mr. LeTang insisted on his innocence from the start and contested the criminal charges against him.  Mr. LeTang did not accept an adjournment in contemplation of dismissal (ACD).  He appeared in New York County Criminal Court (docket #2012NY039855), at 100 Centre Street, on July 26, 2012; September 13, 2012; October 30, 2012; January 22, 2013; February 26, 2013; April 16, 2013; May 16, 2013; July 10, 2013; and August 21, 2013.  The charges against Mr. LeTang were dismissed and sealed on August 21, 2013.

38.     Mr. LeTang made a complaint about the incident with the Civilian Complaint Review Board (#201206968).

39.     No notice of claim was filed with respect to this incident.

## AUGUST 17, 2012 INCIDENT

40.     This incident occurred on August 17, 2012, around 11:20 p.m., outside the plaintiff's residence at 2660 8th Avenue in New York, New York.

41.     Mr. LeTang exited his apartment building and was walking towards the bus stop, when he stopped to speak with his cousin.  Almost immediately, three police officers, including Officer Warner, approached them and Officer Warner told Mr. LeTang, "You can't be out here."  This was part of the ongoing hostility, harassment, and abuse directed at the plaintiff (and other residents of his neighborhood) by officers of the New York City Police Department.

42.     Mr. LeTang and his cousin then moved closer to the curb, next to the bus stop, where they continued their conversation.  A moment later, Officer Warner came up to them

again and angrily said to Mr. LeTang, "Didn't I fucking tell you, you can't be out here?" Mr. LeTang explained to the officer that he was doing nothing wrong, only waiting for the bus and talking to his cousin.  Officer Warner then asked "how long" they were going to be talking. When Mr. LeTang replied, "I didn't know I had a time line," Officer Warner called him a "fucking wise ass" and ordered him to stand near a tree to talk.  Mr. LeTang refused, protesting that he was doing nothing wrong.  During their encounter, Officer Warner and Mr. LeTang used profanity towards each other.

43.     During their encounter, Officer Warner told Mr. LeTang, in sum and substance, that "three or more of you people, black people, can't be together in public."

44.     After arguing back and forth for a few minutes, Mr. LeTang told Officer Warner either to leave him alone or write him a summons.  So Officer Warner wrote him a summons (#433542479-6), charging Mr. LeTang with disorderly conduct, specifically congregating with other persons in a public place and refusing to comply with a lawful order of the police to disperse (P.L. § 240.20(6)).

45.     In the summons, Officer Warner wrote "defendant was observed blocking pedestrian traffic with three other people.  Defendant and others were asked to disperse from location and defendant refused."  This was a knowingly false and perjured statement.

46.     At all relevant times, Mr. LeTang was not intoxicated or under the influence of drugs.  He was not conversing in a loud, abusive, or obscene manner.  He was not acting in a violent, tumultuous, or threatening manner.  He was not obstructing pedestrian or vehicular traffic.

47.     At all relevant times, Mr. LeTang's verbal protests and other speech directed at Officer Warner in response to his insults and provocations was protected by the First Amendment.

48.     At all relevant times, there was no lawful basis for Officer Warner to order Mr. LeTang to move or disperse.

49.     There was no probable cause or other legal justification to charge Mr. LeTang with disorderly conduct or any other crime.

50.     At all relevant times, Mr. LeTang did not engage in any of the behaviors prohibited by the relevant statutes.

51.     At all relevant times, Officer Warner knew that Mr. LeTang had not engaged in any of the behaviors prohibited by the relevant statutes.

52.     At all relevant times, Officer Warner knew that there was no probable cause or other legal justification to charge Mr. LeTang with disorderly conduct or any other crime.

53.     Officer Warner falsely and maliciously issued a summons to Mr. LeTang solely to intimidate, harass, and demean Mr. LeTang.

54.     After the incident, Mr. LeTang called NYPD Inspector Rodney Harrison, the commanding officer of the 32nd Precinct.  Mr. LeTang complained to Inspector Harrison about the incident.  Inspector Harrison told Mr. LeTang that it was his directive that three or more minorities cannot stand amongst one another in public.

55.     Mr. LeTang insisted on his innocence from the start and contested the criminal charges against him.  Mr. LeTang did not accept an adjournment in contemplation of dismissal (ACD).  Mr. LeTang appeared in New York Criminal Court (docket #2012SN098690),

at 346 Broadway, New York, New York, on October 23, 2012, and on November 28, 2012.  A bench trial was held on November 28, 2012, at which Mr. LeTang (acting pro se) and Officer Warner testified.  The judge ruled for Mr. LeTang and the charges against him were dismissed and sealed.  At the conclusion of the trial, the judge commented to Officer Warner, in sum and substance, "I believe you violated this man's constitutional rights."

56.    The plaintiff electronically served a notice of claim on the New York City Comptroller's Office on November 11, 2012 (#2012PI027697).  The plaintiff's 50-h hearing was never conducted.  To date, the city has neglected or refused to settle this matter administratively.  This action is being brought more than 30 days after the notice of claim was served on the city and within one year and 90 days after the incident.

## OCTOBER 19, 2012  INCIDENT

57.    This incident occurred on October 19, 2012, around 11:00 p.m., directly across the street from the plaintiff's residence at 2660 8th Avenue in New York, New York.

58.    Mr. LeTang exited his apartment building and walked across the street to say "happy birthday" to a friend who was standing with a small group of people on the sidewalk next to a bus stop.

59.    Shortly thereafter, a police van pulled up to the curb where the group was talking.  Sergeant Terpos was driving the van; Officer Shea was in the passenger seat.   Sergeant Terpos yelled through the open passenger side window, "You can't be out here.  Clear the block."  Mr. LeTang protested that they were doing nothing wrong and asked why they should move.  Sergeant Terpos angrily replied, "You don't ask me shit!  I'm a police sergeant.  I give orders and you follow them."

60.     When Mr. LeTang continued to protest, Sergent Terpos and Officer Shea jumped out of the police van and confronted him.  During their encounter, the two police officers and Mr. LeTang used profanity towards each other.  After arguing back and forth for a few minutes, Sergeant Terpos said "fuck this" and arrested Mr. LeTang.  Mr. LeTang was handcuffed behind his back, patted down roughly, and placed in the police van.  The handcuffs were excessively tight and caused abrasions on Mr. LeTang's wrists and numbness in his hands.

61.     At all relevant times, Mr. LeTang was not intoxicated or under the influence of drugs.  He was not conversing in a loud, abusive, or obscene manner.  He was not acting in a violent, tumultuous, or threatening manner.  He was not obstructing pedestrian or vehicular traffic.

62.     At all relevant times, Mr. LeTang's verbal protests and other speech directed at the police officers in response to their insults and provocations was protected by the First Amendment.

63.     Mr. LeTang was transported in the police van to the 32nd Precinct station house.  During the ride, Sergeant Terpos told Mr. LeTang, "You're one of those motherfuckers who needs special attention and you're getting it."  When Mr. LeTang told Sergeant Terpos, "You wouldn't be doing this to a white person," Sergent Terpos repled, "Yeah, I wouldn't.  It just so happens to you that I work in your community, a black community."

64.     At the station house, Mr. LeTang was placed in a holding cell and detained for approximately one hour.  He was released after a warrant check for him was negative.

65.     Officer   Shea   issued   Mr.   LeTang   a   summons   (#433707559-8). Mr. LeTang was charged with disorderly conduct, specifically disturbing a lawful assembly or meeting of persons (P.L. § 240.20(4)).

66.     In the summons, Officer Shea wrote that he "observed the respondant [sic] on a public sidewalk, and with intent to cause a disruption gather with 2 others."  This was a knowingly false and perjured statement.

67.     There was no probable cause or other legal justification for Mr. LeTang's arrest and imprisonment.

68.     At all relevant times, Mr. LeTang did not engage in any of the behaviors prohibited by the relevant statutes.

69.     At all relevant times, Sergeant Terpos and Officer Shea knew that Mr. LeTang had not engaged in any of the behaviors prohibited by the relevant statutes.

70.     At all relevant times, Sergeant Terpos and Officer Shea knew that there was no probable cause or other legal justification for arresting Mr. LeTang.

71.     Sergeant Terpos and Officer Shea falsely and maliciously arrested Mr. LeTang solely to intimidate, harass, and demean Mr. LeTang.

72.     Mr. LeTang was in police custody for approximately 1-2 hours in total.

73.     After his release, Mr. LeTang called Inspector Harrison and complained to him about the double-standard regarding how black persons and white persons are treated by the police.  Inspector Harrison told Mr. LeTang, "I don't have a problem with white people," and again confirmed that it was the policy in his district that groups of minorities cannot congregate in public.

74.     Mr. LeTang insisted on his innocence from the start and contested the criminal charges against him.  Mr. LeTang did not accept an adjournment in contemplation of dismissal (ACD).  On December 27, 2012, Mr. LeTang appeared in New York Criminal Court, at 346 Broadway, New York, New York.  Neither Sergeant Terpos nor Officer Shea appeared in court.  The charges against Mr. LeTang were dismissed because of insufficient evidence.

75.     Mr. LeTang made a complaint about the incident to the Civilian Complaint Review Board (#201300746).  The CCRB referred the matter to the Internal Affairs Bureau (IAB Log # 13-4175).

76.     The plaintiff electronically served a notice of claim on the New York City Comptroller's Office on January 7, 2013 (#2013PI000594).  The plaintiff's 50-h hearing was never conducted.  To date, the city has neglected or refused to settle this matter administratively. This action is being brought more than 30 days after the notice of claim was served on the city and within one year and 90 days after the incident.

### COUNT ONE:  FALSE ARREST/FALSE IMPRISONMENT
#### (Section 1983; Officer Soto, Officer Williams; May 21, 2012 )

77.     Plaintiff repeats and re-alleges Paragraphs 1-76 above.

78.     The elements of a claim for false arrest/false imprisonment under Section 1983 are:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

79.     Officer Soto and Officer Williams intended to, and did, confine Mr. LeTang.

80.     Mr. LeTang was conscious of the confinement.

-15-

81.     Mr. LeTang did not consent to the confinement.

82.     The confinement was not otherwise privileged.

83.     There was no probable cause or other legal justification for Mr. LeTang's arrest and imprisonment by Officer Soto and Officer Williams.

84.     Officer Soto and Officer Williams are not entitled to qualified immunity for falsely arresting and imprisoning Mr. LeTang.

85.     Officer Soto's and Officer Williams' actions violated Mr. LeTang's clearly established rights under the Fourth Amendment.

86.     It was not objectively reasonable for Officer Soto and Officer Williams to believe that their actions did not violate Mr. LeTang's rights.

87.     Officer Soto and Officer Williams acted with intentional, knowing, callous, and/or reckless indifference to Mr. LeTang's rights.

88.     As a result of Officer Soto's and Officer Williams' unconstitutional conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and suffering, physical pain and suffering (from being manhandled, handcuffed, and patted down roughly), damaged property (a broken cell phone), and other compensable injuries, for which he is entitled to an award of compensatory damages.

89.     Mr. LeTang is entitled to an award of punitive damages to punish Officer Soto and Officer Williams for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT TWO:  MALICIOUS PROSECUTION
### (Section 1983; Officer Soto, Officer Williams; May 21, 2012 )

90.     Plaintiff repeats and re-alleges Paragraphs 1-89 above.

91.    The elements of a claim for malicious prosecution under Section 1983 are: (1) the defendant initiated a criminal prosecution against the plaintiff; (2) the defendant lacked probable cause; (3) the defendant acted with malice; and (4) the prosecution was terminated in the plaintiff's favor.

92.    Officer Soto and Officer Williams initiated a criminal prosecution against Mr. LeTang.

93.    Officer Soto and Officer Williams lacked probable cause to charge Mr. LeTang with any criminal offenses.

94.    Officer Soto and Officer Williams acted with malice.

95.    The prosecution was terminated in Mr. LeTang's favor.

96.    Mr. LeTang suffered a deprivation of liberty under the Fourth Amendment because he was required to appear in court in connection with the criminal charges.

97.    Officer Soto and Officer Williams are not entitled to qualified immunity for maliciously prosecuting Mr. LeTang.

98.    Officer Soto's and Officer Williams' actions violated Mr. LeTang's clearly established rights under the Fourth Amendment.

99.    It was not objectively reasonable for Officer Soto and Officer Williams to believe that their actions did not violate Mr. LeTang's rights.

100.    Officer Soto and Officer Williams acted with intentional, knowing, callous, and/or reckless indifference to Mr. LeTang's rights.

101.    As a result of Officer Soto's and Officer Williams' unconstitutional conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and

suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

102.    Mr. LeTang is entitled to an award of punitive damages to punish Officer Soto and Officer Williams for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT THREE:  MALICIOUS PROSECUTION
### (Section 1983; Officer Warner; August 17, 2012)

103.    Plaintiff repeats and re-alleges Paragraphs 1-102 above.

104.    The elements of a claim for malicious prosecution under Section 1983 are: (1) the defendant initiated a criminal prosecution against the plaintiff; (2) the defendant lacked probable cause; (3) the defendant acted with malice; and (4) the prosecution was terminated in the plaintiff's favor.

105.    Officer Warner initiated a criminal prosecution against Mr. LeTang.

106.    Officer Warner lacked probable cause to charge Mr. LeTang with any criminal offenses.

107.    Officer Warner acted with malice.

108.    The prosecution was terminated in Mr. LeTang's favor.

109.    Mr. LeTang suffered a deprivation of liberty under the Fourth Amendment because he was required to appear in court in connection with the criminal charges.

110.    Officer Warner is not entitled to qualified immunity for maliciously prosecuting Mr. LeTang.

111.    Officer Warner's actions violated Mr. LeTang's clearly established rights under the Fourth Amendment.

112.   It was not objectively reasonable for Officer Warner to believe that his actions did not violate Mr. LeTang's rights.

113.   Officer Warner acted with intentional, knowing, callous, and/or reckless indifference to Mr. LeTang's rights.

114.   As a result of Officer Warner's unconstitutional conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

115.   Mr. LeTang is entitled to an award of punitive damages to punish Officer Warner for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT FOUR:  MALICIOUS PROSECUTION

**(New York law; Officer Warner, City of New York; August 17, 2012)**

116.   Plaintiff repeats and re-alleges Paragraphs 1-115 above.

117.   The elements of a claim for malicious prosecution under New York law are:  (1) the defendant initiated a criminal prosecution against the plaintiff; (2) the defendant lacked probable cause; (3) the defendant acted with malice; and (4) the prosecution was terminated in the plaintiff's favor.

118.   Officer Warner initiated a criminal prosecution against Mr. LeTang.

119.   Officer Warner lacked probable cause to charge Mr. LeTang with any criminal offenses.

120.   Officer Warner acted with malice.

121.   The prosecution was terminated in Mr. LeTang's favor.

122.    Officer Warner is not entitled to qualified immunity for maliciously prosecuting Mr. LeTang.

123.    Officer Warner's actions were taken without a reasonable basis.

124.    Officer Warner's actions were taken in bad faith.

125.    Officer Warner's actions were intentional, wanton, and malicious.

126.    As a result of Officer Warner's unlawful conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

127.    Mr. LeTang is entitled to an award of punitive damages to punish Officer Warner for his unlawful conduct and to deter him from engaging in similar unlawful conduct in the future.

128.    Because Officer Warner's actions were taken in the scope of his employment with the NYPD, the City of New York is vicariously liable for the harm caused by his tortious conduct.

## COUNT FIVE:  FALSE ARREST/FALSE IMPRISONMENT
### (Section 1983; Sergeant Terpos, Officer Shea; October 19, 2012)

129.    Plaintiff repeats and re-alleges Paragraphs 1-128 above.

130.    The elements of a claim for false arrest/false imprisonment under Section 1983 are:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

131.    Sergeant Terpos and Officer Shea intended to, and did, confine Mr. LeTang.

132.   Mr. LeTang was conscious of the confinement.

133.   Mr. LeTang did not consent to the confinement.

134.   The confinement was not otherwise privileged.

135.   There was no probable cause or other legal justification for Mr. LeTang's arrest and imprisonment by Sergeant Terpos and Officer Shea.

136.   Sergeant Terpos and Officer Shea are not entitled to qualified immunity for falsely arresting and imprisoning Mr. LeTang.

137.   Sergeant Terpos' and Officer Shea's actions violated Mr. LeTang's clearly established rights under the Fourth Amendment.

138.   It was not objectively reasonable for Sergeant Terpos and Officer Shea to believe that their actions did not violate Mr. LeTang's rights.

139.   Sergeant Terpos and Officer Shea acted with intentional, knowing, callous, and/or reckless indifference to Mr. LeTang's rights.

140.   As a result of Sergeant Terpos' and Officer Shea's unconstitutional conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and suffering, physical pain and suffering (from being manhandled, handcuffed, and patted down roughly), and other compensable injuries, for which he is entitled to an award of compensatory damages.

141.   Mr. LeTang is entitled to an award of punitive damages to punish Sergeant Terpos and Officer Shea for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT SIX:  MALICIOUS PROSECUTION

**(Section 1983; Sergeant Terpos, Officer Shea; October 19, 2012)**

142.    Plaintiff repeats and re-alleges Paragraphs 1-141 above.

143.    The elements of a claim for malicious prosecution under Section 1983 are: (1) the defendant initiated a criminal prosecution against the plaintiff; (2) the defendant lacked probable cause; (3) the defendant acted with malice; and (4) the prosecution was terminated in the plaintiff's favor.

144.    Sergeant Terpos and Officer Shea initiated a criminal prosecution against Mr. LeTang.

145.    Sergeant Terpos and Officer Shea lacked probable cause to charge Mr. LeTang with any criminal offenses.

146.    Sergeant Terpos and Officer Shea acted with malice.

147.    The prosecution was terminated in Mr. LeTang's favor.

148.    Mr. LeTang suffered a deprivation of liberty under the Fourth Amendment because he was required to appear in court in connection with the criminal charges.

149.    Sergeant Terpos and Officer Shea are not entitled to qualified immunity for maliciously prosecuting Mr. LeTang.

150.    Sergeant Terpos' and Officer Shea's actions violated Mr. LeTang's clearly established rights under the Fourth Amendment.

151.    It was not objectively reasonable for Sergeant Terpos and Officer Shea to believe that their actions did not violate Mr. LeTang's rights.

152.    Sergeant Terpos and Officer Shea acted with intentional, knowing, callous, and/or reckless indifference to Mr. LeTang's rights.

153.    As a result of Sergeant Terpos' and Officer Shea's unconstitutional conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

154.    Mr. LeTang is entitled to an award of punitive damages to punish Sergeant Terpos and Officer Shea for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT SEVEN:  FALSE ARREST/FALSE IMPRISONMENT
### (New York law; Sergeant Terpos, Officer Shea, City of New York; October 19, 2012)

155.    Plaintiff repeats and re-alleges Paragraphs 1-154 above.

156.    The elements of a claim for false arrest/false imprisonment under New York law are:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

157.    Sergeant Terpos and Officer Shea intended to, and did, confine Mr. LeTang.

158.    Mr. LeTang was conscious of the confinement.

159.    Mr. LeTang did not consent to the confinement.

160.    The confinement was not otherwise privileged.

161.    There was no probable cause or other legal justification for Mr. LeTang's arrest and imprisonment by Sergeant Terpos and Officer Shea.

162.    Sergeant Terpos and Officer Shea are not entitled to qualified immunity for falsely arresting and imprisoning Mr. LeTang.

163.     Sergeant Terpos' and Officer Shea's actions were taken without a reasonable basis.

164.     Sergeant Terpos' and Officer Shea's actions were taken in bad faith.

165.     Sergeant Terpos' and Officer Shea's actions were intentional, wanton, and malicious.

166.     As a result of Sergeant Terpos' and Officer Shea's unlawful conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and suffering, physical pain and suffering (from being manhandled, handcuffed, and patted down roughly), and other compensable injuries, for which he is entitled to an award of compensatory damages.

167.     Mr. LeTang is entitled to an award of punitive damages to punish Sergeant Terpos and Officer Shea for their unlawful conduct and to deter them from engaging in similar unlawful conduct in the future.

168.     Because Sergeant Terpos' and Officer Shea's actions were taken in the scope of their employment with the NYPD, the City of New York is vicariously liable for the harm caused by their tortious conduct.

## COUNT EIGHT:  MALICIOUS PROSECUTION

**(New York law; Sergeant Terpos, Officer Shea, City of New York; October 19, 2012)**

169.     Plaintiff repeats and re-alleges Paragraphs 1-168 above.

170.     The elements of a claim for malicious prosecution under New York law are:  (1) the defendant initiated a criminal prosecution against the plaintiff; (2) the defendant lacked probable cause; (3) the defendant acted with malice; and (4) the prosecution was terminated in the plaintiff's favor.

171.     Sergeant Terpos and Officer Shea initiated a criminal prosecution against Mr. LeTang.

172.     Sergeant Terpos and Officer Shea lacked probable cause to charge Mr. LeTang with any criminal offenses.

173.     Sergeant Terpos and Officer Shea acted with malice.

174.     The prosecution was terminated in Mr. LeTang's favor.

175.     Sergeant Terpos and Officer Shea are not entitled to qualified immunity for maliciously prosecuting Mr. LeTang.

176.     Sergeant Terpos' and Officer Shea's actions were taken without a reasonable basis.

177.     Sergeant Terpos' and Officer Shea's actions were taken in bad faith.

178.     Sergeant Terpos' and Officer Shea's actions were intentional, wanton, and malicious.

179.     As a result of Sergeant Terpos' and Officer Shea's unlawful conduct, Mr. LeTang suffered loss of liberty, insult and embarrassment, emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

180.     Mr. LeTang is entitled to an award of punitive damages to punish Sergeant Terpos and Officer Shea for their unlawful conduct and to deter them from engaging in similar unlawful conduct in the future.

181.     Because Sergeant Terpos' and Officer Shea's actions were taken in the scope of their employment with the NYPD, the City of New York is vicariously liable for the harm caused by their tortious conduct.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiff Terric LeTang hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff demands judgment against the Defendants for:

A.      Compensatory damages in an amount no less than $500,000;

B.      Punitive damages in an amount no less than $500,000;

C.      Pre-judgment and post-judgment interest;

D.      Attorney's fees, costs, and disbursements; and

E.      All other relief that the plaintiff may be entitled to under law, or as justice may require.


Dated: May 8, 2014
        New York, NY

                                        Respectfully submitted,

                                        *Steven M. Warshawsky*
                        By:     _____
                                        STEVEN M. WARSHAWSKY (SW 5431)
                                        Empire State Building
                                        350 Fifth Avenue, 59th Floor
                                        New York, NY  10118
                                        Tel:  (212) 601-1980
                                        Fax:  (212) 601-2610
                                        Email:  smw@warshawskylawfirm.com
                                        Website:  www.warshawskylawfirm.com

-26-